**SO ORDERED.**

**SIGNED this 8 day of October, 2013.**

_____
**Randy D. Doub**
**United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**WILMINGTON DIVISION**

**IN RE:**

| | |
|---|---|
| **WILLIAM K. BROOKS,** | **CHAPTER 11** |
| **SUE A. BROOKS,** | **CASE NO.  12-02072-8-RDD** |
| **DEBTORS** | |

**ORDER DENYING CONFIRMATION OF CHAPTER 11 PLAN**

Pending before the Court is the Plan of Reorganization (the "Plan") and the Disclosure statement filed by William K. Brooks and Sue A. Brooks (the "Debtors") on July 13, 2012, the Amendment to Chapter 11 Plan filed by the Debtors on June 21, 2013, the Objection to Confirmation of Plan filed by the United States Bankruptcy Administrator of September 7, 2012, the Objection to Confirmation of Chapter 11 Plan filed by the Internal Revenue Service on July 26, 2012, the Objection to Confirmation of Plan and Disclosure Statement filed by Branch Banking and Trust Company on September 11, 2012, the Objection to Confirmation of Plan filed by Bank of the West on September 11, 2012, the Objection to Confirmation of Plan and Disclosure Statement filed by Caterpillar Financial Services Corporation on September 11, 2012, the Objection to Confirmation of Plan filed by Four Oaks Bank on September 11, 2012, and the Objection to Plan and Disclosure

Statement filed by Patriot State Bank on September 11, 2012.  The Court conducted a hearing on September 23, 2013 in Wilson, North Carolina to consider these matters.

## BACKGROUND

On March 16, 2012, the Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code. "The Debtors are residents of Duplin County, North Carolina and are in the business of purchasing, developing, and managing real property, as well as the operation of construction and agricultural businesses in Duplin County and Brunswick County, North Carolina."  Disclosure Statement at 4, *In re Brooks*, No. 12-02072-8-RDD (Bankr. E.D.N.C. July 13, 2012). The Debtors intend to reorganize their debts and continue their business activities.

As of the hearing date, all creditors had submitted accepting ballots or failed to submit ballots, with the exception of Patriot State Bank ("Patriot") which filed a ballot rejecting the Plan.

The Court previously ruled that Patriot has a secured claim in the amount of $138,000.00 based on the value of the real property collateral. The Debtor's Plan consists of fifteen (15) classes. The approximate total of general unsecured claims as of the petition date was $1,373,523.40.  The Debtors propose to pay the claims in the unsecured class $50,000.00 with annual payments over a period of ten (10) years from the effective date of the plan.

At the hearing, the Debtors proposed a modified treatment of Patriot's claim. The Debtors proposed to treat the obligation as secured in the amount of $138,000.00 and amortize the obligation over a period of fifteen (15) years with a fixed interest rate of five (5%), with a five (5) year call. The balance of Patriot's claim will be treated in the unsecured class.

At the hearing,  pursuant to Bankruptcy Rule 3014, Patriot made an election pursuant to 11 U.S.C. § 1111(b) to have its claim receive treatment in the secured amount of $379,592.01.

## DISCUSSION

Creditors rely on a debtor's disclosure statement in determining whether to vote for or approve a proposed plan of reorganization.  *In re Radco*, 402 B.R. 666, 682 (Bankr. E.D.N.C. March 9, 2009) (citing *Ryan Operations of G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3rd Cir. 1996), *Nelson v. Dalkon Shield Claimants Trust* (*In re A.H. Robins Co., Inc.*), 216 B.R. 175, 180 (Bankr. E.D.Va. 1997), *aff'd without opinion* 163 F.3d 598 (4th Cir. 1998). Creditors also rely on a debtor's disclosure statement to determine what risks they will face. *Id.* at 682. (citation omitted). Accordingly, the importance of full and honest disclosure is critical and cannot be overstated. *Id.* (citation omitted).

> Section 1125(a)(1) of the Bankruptcy Code defines adequate information as:
>
> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor; any successor to the debtor; and a hypothetical investor typical of the holders of claims or interest in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information ...

11 U.S.C. § 1125(a)(1).

In determining the adequacy of information under 11 U.S.C. §1125(a)(1), the bankruptcy

court reviews the information on a case by case basis.   *In re Radco*, 402 B.R. 666, 682 (Bankr. E.D.N.C. March 9, 2009) (citation omitted).

At the hearing, William Kenneth Brooks, Jr., the son of the Debtors, testified as to new jobs recently awarded to Brooks Construction, an entity in which his father owns a one-third interest.  Mr. Brooks testified as to a joint venture with Ray Peele. Mr. Peele is currently a debtor in a bankruptcy proceeding before this Court. He represented that upon confirmation of the Plan of Reorganization, Brooks Construction intended to merge with an entity operated by Mr. Peele.  This newly formed entity would take over all of the new jobs recently awarded. Going forward, Mr. Brooks stated this relationship would allow the Debtor to broaden its business. Mr. Brooks stated that he has recently in the past two months made bids on new jobs and the work volume is increasing.

At the hearing, the Debtor proffered a Jobs Bid list which lists the new jobs.  Mr. Brooks testified that some of the jobs on the Jobs Bid list were awarded to Brooks Construction. The remaining jobs were awarded to Mr. Peele's operation.  Mr. Brooks testified that Brooks Construction has been awarded a job entitled FirstBank and he expects to receive a total of $225,000.00 by December of 2013 for completing this job.  Mr. Brooks testified that Brooks Construction has also been awarded a job entitled Realo drug store and he expects to receive a total of $151,000.00 by December of 2013 for completing this job.  Mr. Brooks testified that a job has been awarded entitled Schmidt St. and lot AS 3534 and a total of $85,399.00 will be received by December of 2013 for completing this job. Mr. Brooks testified that Brooks Construction has been awarded a job entitled Concrete crushing Danny Ottoway and he expects to receive a total of $68,000.00 by the end of October of 2013 for completing this job.  Mr. Brooks testified that an ongoing project involving Mr. Peele entitled Grant Wood Subdivision has been awarded in the

amount of $400,000.00. Mr. Brooks testified as to a job entitled Chipping and Grinding operations. He represented that the Debtor and Mr. Peele are chippers and wood grinders. He expects to receive an estimated $5,500.00 weekly for these types of operations. Mr. Brooks testified that Brooks Construction has also been awarded a job entitled Sale of recycled concrete 2200 ton. Together with Mr. Peele, the Debtor is a concrete crusher and crushes concrete from various jobs and recycles the concrete. Mr. Brooks represents he currently has a contract to sell 2,200 tons of the recycled material for $41,800.00. Also, Mr. Brooks testified that Brooks Construction was awarded a three year storm clean up contract with the Town of Wallace and he expects to receive pay depending upon what jobs Brooks Construction completes.

Mr. Brooks testified that he conservatively projects over a twelve month period the new jobs on the Jobs Bid list would likely generate a gross of 6 million to 8 million dollars to the newly formed entity.

The Plan and Disclosure Statement are devoid of any information regarding the Debtor's business relationship with Mr. Peele. At the hearing, Mr. Brooks testified as to multiple awarded job bids. However, the Plan and Disclosure statement do not contain any information regarding the new bids. A disclosure statement should provide the average unsecured creditor "what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Radco*, 402 B.R. 666, 683 (Bankr. E.D.N.C. March 9, 2009) (citation omitted). The Plan proposes to pay the claims in the unsecured class a total of $50,000.00 with annual payments over a period of ten (10) years from the effective date of the Plan. The unsecured class is entitled to know the specifics regarding the new bids and the income to be received, prior to casting their ballot to accept or reject the plan. The unsecured class is entitled to know information regarding the potential profit

the newly formed company may generate. The unsecured creditors are not aware of the Debtor's projected disposable income and have blindly cast votes on the Plan.

Accordingly, the Court finds that the Disclosure Statement does not contain adequate information and the approval of the Disclosure Statement is **DENIED**. The Debtor is directed to submit a new disclosure statement fully disclosing the Brooks Construction joint venture with Mr. Peele, the jobs it has bid, the bid prices, the low bids, the awarded jobs, the projections of income, the estimated gross revenue projections of the new company, along with the projected disposable income. The Debtors shall have thirty (30) days to submit a new Disclosure Statement and re-serve on all creditors.

**SO ORDERED.**
                                    **END OF DOCUMENT**